IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ELLEN PERRICCI                          :

                                    :

     v.                :    Civil Action No. DKC 11-0083

                                    :

SYSTEMS ASSESSMENT & RESEARCH,          :
INC.                                    :

**MEMORANDUM OPINION**

Presently pending and ready for review in this breach of employment contract case is a motion to dismiss or, in the alternative, for summary judgment filed by Defendant Systems Assessment and Research, Inc. ("SAR"). (ECF No. 10). The issues have been fully briefed, and the court now rules, no hearing deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted in part and denied in part.

**I.  Background**

The following facts are either alleged by Plaintiff or taken in the light most favorable to her. Plaintiff Ellen Perricci, M.D., a resident of Virginia, is a licensed medical doctor specializing in psychiatry. Defendant SAR is a Maryland corporation that provides medical staffing to corporate and governmental entities for the purpose of providing medical service. On February 1, 2010, Dr. Perricci signed an offer letter for employment with SAR ("the letter agreement") whereby

Dr. Perricci would serve as an "Adult Psychiatrist" at one of SAR's federal government client sites, the Department of Psychiatry at Walter Reed Army Medical Center ("Walter Reed") in Washington, D.C.[1]   The letter agreement was produced on SAR letterhead and was signed only by Dr. Perricci, though the name of the President and CEO of SAR, Maria J. Hankerson, Ph.D, appeared in print at the end as well.   Pursuant to the letter agreement, Dr. Perricci's employment commenced on March 8, 2010.[2]

The letter agreement included the following provision:

> You may not terminate your employment with SAR Corp during your first year, or thereafter on less than thirty (30)-working day's prior notice to the other, except that SAR Corp may terminate your services at any time without notice for cause, and you may terminate your services at any time with notice after year one (1).

(ECF No. 1-1, at 1).   The letter agreement went on to provide:

------------------------

[1] Specifically, the letter agreement read:

> You will serve as a[n] Adult psychiatrist at SAR Corp's client site and will be responsible for the duties listed on the Job Description.   This position is located in the Department of Psychiatry at Walter Reed Army Medical Center, Washington, DC.

(ECF No. 1-1, at 1).

[2] In a sworn affidavit, Dr. Perricci states that she began working on March 18, 2010.   (ECF No. 13-1 ¶ 10).   This appears to be an error, however, in light of both parties' otherwise consistent allegations and evidence that Dr. Perricci's start date was March 8, 2010.

> You will abide by SAR Corp's standard rules and regulations and will acknowledge in writing that you have read SAR Corp's Employee Handbook (once it has been made available to you).  As a condition of employment, you will sign and comply with a Confidentiality, Non-Competition Inventions Agreement, a copy of which is attached hereto as Exhibit A, which, among other things, prohibits certain employment by you within a year following the termination of your position with SAR Corp and bars the unauthorized use or disclosure by you of Company proprietary information.

(*Id.* at 2).  The Employee Handbook referred to in the employment contract included the following terms on its "Receipt/Acknowledgement Page":

> I have received a copy of SAR Corp's Employee Handbook and have read and understood its contents, specifically including the statements in the foreword describing the purpose and effect of the Handbook.  I understand that SAR Corp is an "at will" employer and as such employment with SAR Corp is not for a fixed term or definite period and may be terminated at the will of either party, with or without cause, with prior notice.  In addition, I understand that this Handbook states SAR Corp's policies and practices in effect as of the date of publication.  I understand that nothing contained in the Handbook may be construed as creating a promise of future benefits or a binding contract with SAR Corp for benefits or for any other purpose.  I also understand that these policies and procedures are continually evaluated and may be amended, modified or terminated at any time.

(ECF No. 10-3, at 1).[3]

Walter Reed had been a client of SAR's since August 21, 1998, based on a contract ("the Walter Reed contract") that had been extended repeatedly over the years.   On August 15, 2010, SAR learned that the government was not going to renew the Walter Reed contract.   On August 27, 2010, SAR officially informed Dr. Perricci that the Walter Reed contract was due to end on September 30, 2010.   Because the Walter Reed contract was the basis of Dr. Perricci's employment, SAR terminated Dr. Perricci's employment on September 30th.[4]   At no point during the negotiation process for Dr. Perricci's employment did SAR inform Dr. Perricci about the possibility of the Walter Reed contract expiring on that date.

On January 11, 2011, Dr. Perricci filed a complaint against SAR in this court.   (ECF No. 1).   The complaint contains four counts:     (1)   breach   of   contract;   (2)   negligent misrepresentation;   (3)   fraud   in   the   inducement;   and   (4) respondeat superior.   On June 10, 2011, SAR filed the pending motion to dismiss or, in the alternative, for summary judgment.

---

[3] The Employee Handbook was signed on March 8, 2010, by Dr. Perricci and Tracy Turner, a representative for SAR.

[4] During the course of Dr. Perricci's employment, she was paid $81,964.81 of the $170,000.00 annual salary provided for by the letter agreement.

(ECF No. 10).  Dr. Perricci filed opposition papers on July 11, 2011.  (ECF No. 13).  SAR replied on July 28, 2011.  (ECF No. 15).

## II.  Standard of Review

SAR has moved to dismiss or, in the alternative, for summary judgment, although it argues that this motion need not be converted to one for summary judgment.  Because both parties rely on matters outside the pleadings for some but not all of SAR's arguments, the motion will be treated as a motion for summary judgment for certain claims.  *See Walker v. True*, 399 F.3d 315, 319 n.2 (4th Cir. 2005); *Offen v. Brenner*, 553 F.Supp.2d 565, 568 (D.Md. 2008).  Otherwise, the motion will be treated as a motion to dismiss.  The court will determine on a claim-by-claim basis which standard to apply.

### A.   Standard of Review for Motion to Dismiss for Failure to State a Claim

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to

relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).   That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).   In evaluating the complaint, the court need not accept unsupported legal allegations.   *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).   Nor must it agree with legal conclusions couched as factual allegations, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"   *Iqbal*, 129 S.Ct. at 1950

6

(quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## B.    Standard of Review for Motion for Summary Judgment

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).  "If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).   At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion.   *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

## III. Analysis[5]

### A.   Count One:  Breach of Contract

SAR contends that Dr. Perricci was an at-will employee who could be terminated at any time without cause, and thus she has no breach of contract claim.   Dr. Perricci responds that according to the letter agreement, she was guaranteed at least one year of employment, thus any termination prior to that point had to be for cause.   The parties appear to agree that the September 30th termination of Dr. Perricci was without cause.

Employment in Maryland is presumptively at-will.   *Towson Univ. v. Conte*, 384 Md. 68, 79 (2004).   An employment contract

---

[5] Neither party discusses which state law should apply. Regarding the breach of contract claim, the letter agreement specifically provides that Maryland law applies.   (ECF No. 1-1, at 2).   Regarding the fraud and negligent misrepresentation claims, when choosing the applicable state substantive law while exercising diversity jurisdiction, a federal district court applies the choice of law rules of the forum state.   *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).   For tort claims, Maryland generally adheres to the *lex loci delecti commissi*, or place of harm, principle to determine the applicable state's substantive law.   *Hauch v. Connor*, 295 Md. 120, 123-24 (1983).   Here, the parties appear to agree that both the alleged fraud and negligent misrepresentation occurred in Maryland, so Maryland law should apply.

of indefinite duration gives rise to at-will employment, which "can be legally terminated at the pleasure of either party at any time." *Parks v. Alpharma, Inc.*, 421 Md. 59, 73 (2011) (internal quotations omitted).   Despite this presumption, parties may

> create an employment relationship whereby the employee may be terminated only for just cause.   While the language of the contract itself may express a just cause requirement, a contractual delineation of the length of the employment period will also create a just cause employment relationship because by specifying the length or term of employment, the employer usually is considered to have surrendered its ability to terminate the employee at its discretion.

*Towson Univ.*, 384 Md. at 79-80 (internal citations omitted).   In general, when construing a contract, Maryland follows the "objective law of contracts":

> [W]hen the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed.   In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean.

*Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261 (1985).

Here, the letter agreement states that Dr. Perricci "may not terminate [her] employment with SAR Corp during [her] first year." (ECF No. 1-1, at 1).[6]  SAR admits as much in its reply. (*See* ECF No. 15, at 2 ("The offer letter does provide that [Defendant] can seek reimbursement of its staffing costs from [Plaintiff] if she leaves her employment within the first year . . . .")).  Because Dr. Perricci was not free to terminate the letter agreement for one year, the letter agreement could be construed as not creating at-will employment — at least for the first year of the contract.  For an employment agreement to be at-will, the parties must be free to terminate the agreement at any time for almost any reason.  *See Parks*, 421 Md. at 73. Thus, even though the letter agreement on its face only restricted Dr. Perricci's ability to terminate the relationship, it is arguable that it sufficiently evidenced an intent on behalf of the parties to be bound to a fixed term of employment of at least one year.  *See Towson Univ.*, 384 Md. at 79-80; *see also* 1-3 Stanley Mazaroff & Todd Horn, *Maryland Employment Law* § 3.02 (2011) ("In order to overcome the presumption in Maryland that employment continues only at the will of the parties,

---

[6] In this respect, SAR's reliance on *Gill v. Computer Equipment Corp.*, 266 Md. 170 (1972), to discount Dr. Perricci's subjective belief about the term of the letter agreement is of no consequence.  The unambiguous language of the letter agreement resolves the contract interpretation issue here.

either the contract must expressly provide that it is for a fixed period of time, or there must be clear and substantial circumstantial evidence showing that the parties intended their relationship to continue for a definite period.").

Moreover, the letter agreement stated that "SAR Corp may terminate your services at any time without notice for cause." (ECF No. 1-1, at 1).  Had SAR intended that Dr. Perricci's employment be at-will, there would not have been any need to include such a statement.  At-will employees, by definition, can be terminated at any time with or without cause.  Because contract provisions should be construed to avoid rendering any provisions meaningless, *Nat'l Union Fire Ins. Co. v. David A. Bramble, Inc.*, 388 Md. 195, 209 (2005), the inclusion of this phrase is further evidence that the parties intended that Dr. Perricci be employed at least one year.

SAR contends that reading a definite term of employment into the letter agreement "conflicts with the at-will provision of the employee handbook that is incorporated by reference." (ECF No. 15, at 3).  SAR then points to the acknowledgement page of the Employee Handbook signed by Dr. Perricci as evidence that it intended Dr. Perricci to be an at-will employee.[7]  The

---

[7] SAR attached the acknowledgement page and other parts of the Employee Handbook to its motion.  Because SAR relies on this outside material here, and Dr. Perricci refers to it as well,

acknowledgement page reads, in part:   "I understand that SAR Corp is an 'at will' employer and as such employment with SAR Corp is not for a fixed term or definite period and may be terminated at the will of either party, with or without cause, with prior notice."   (ECF No. 10-3, at 1).   As a threshold matter, however, it is not entirely clear that the Employee Handbook is, in fact, "incorporated by reference," at least as a source of binding obligations on the parties.   The putative incorporation provision according to SAR reads:   "You will abide by SAR Corp's standard rules and regulations *and will acknowledge in writing that you have read SAR Corp's Employee Handbook* (once it has been made available to you)."   (ECF No. 1-1, at 2) (emphasis added).[8]   Although SAR argues otherwise, this provision only requires that Dr. Perricci *read* the Employee Handbook.   It does not definitively establish that SAR's

---

the motion will be treated as one for summary judgment as to this count.   Contrary to SAR's assertions, the facts referred to in this extra material were not in the complaint or the exhibits attached to the complaint.

[8] The Employee Handbook is referred to a second time in the letter agreement:   "For purposes of this letter agreement, 'cause' shall include your failure to substantially perform your duties for SAR Corp for any reason, including disability as well as the grounds for termination set forth in the Employee Handbook."   (ECF No. 1-1, at 1).   If anything, as explained earlier, this sort of explicit discussion of what constitutes "cause" bolsters the notion that Dr. Perricci was not hired as an at-will employee.

"standard rules and regulations" (which Dr. Perricci must follow) and the Employee Handbook are one and the same.

Though not incorporated in any written agreement, an employee handbook may in certain circumstances alter the contours of an employment relationship. *See, e.g., Staggs v. Blue Cross of Md., Inc.*, 61 Md.App. 381, 392 (1985) (holding that provisions in an employee handbook could "limit the employer's discretion to terminate an indefinite employment or . . . set forth a required procedure for termination of such employment"). Where an employee handbook or personnel policy "expressly stated that [it] should not be treated as a contract in any way" or "reserved the right to change any of the terms of the [h]andbook at any time," however, that handbook or policy does not create enforceable contractual rights. *See Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md.App. 470, 492-94 (1995); *see also Cheek v. United Healthcare of the Mid-Atl., Inc.*, 378 Md. 139, 150, 161 (2003) (holding an arbitration provision in an employee handbook unenforceable, in part, where the employer could "alter, amend, modify, or revoke the [p]olicy at its sole and absolute discretion at any time with or without notice"); *Castiglione v. Johns Hopkins Hosp.*, 69 Md.App. 325, 340-41 (1986) (holding that an employer may disclaim any putative contractual rights arising out of an employee handbook). This disclaimer must be "clear and unequivocal." *Elliott v. Bd. of*

*Trs.*, 104 Md.App. 93, 102 (1995); *accord Castiglione*, 69 Md.App. at 340.  In this case, the acknowledgement page of the Employee Handbook, which SAR itself offered into evidence, reads more fully:

> I have received a copy of SAR Corp's Employee Handbook and have read and understood its contents, specifically including the statements in the foreword describing the purpose and effect of the Handbook.  I understand that SAR Corp is an "at will" employer and as such employment with SAR Corp is not for a fixed term of definite period and may be terminated at the will of either party, with or without cause, with prior notice.  In addition, I understand that this Handbook states SAR Corp's policies and practices in effect as of the date of publication.  *I understand that nothing contained in the Handbook may be construed as creating a promise of future benefits or a binding contract with SAR Corp for benefits or for any other purpose.  I also understand that these policies and procedures are continually evaluated and may be amended, modified or terminated at any time.*

(ECF No. 10-3, at 1) (emphasis added).  Not only does the Employee Handbook clearly and unequivocally disclaim itself as a binding contract "for any . . . purpose," it further distances itself from enforceability by reserving the right to be "amended, modified or terminated at any time."  (*Id.*).  Either one of these reasons is sufficient to hold all provisions in the Employee Handbook unenforceable with respect to the employment relationship between SAR and Dr. Perricci.  *See Bagwell*, 106

Md.App. at 492-94.[9]   Therefore, SAR cannot rely on the Employee Handbook to show that Dr. Perricci was an at-will employee during her first year.

Even if the letter agreement specifically incorporates the Employee Handbook, summary judgment is not warranted because there would be an ambiguity in the documents regarding SAR's intent in hiring Dr. Perricci.   Where a contract consists of more than one document, "the writings are to be read and construed together as if they were one instrument." *Bachmann v. Glazer & Glazer, Inc.*, 316 Md. 405, 415 (1989).   "[T]he intention of the parties should be identified 'from all the documents comprising the transaction.'" *Ecology Servs., Inc. v. GranTurk Equip., Inc.*, 443 F.Supp.2d 756, 771 (D.Md. 2006) (quoting *DWS Holdings, Inc. v. Hyde Park Assocs.*, 33 Md.App. 667, 675 (1976)).   Here, although the acknowledgement page of the Employee Handbook indicates that SAR is generally an at-will employer (ECF No. 10-3, at 1), the letter agreement as discussed above suggests otherwise.   To resolve this ambiguity, SAR

---

[9] Even if SAR had not included these disclaimers in the Employee Handbook, it is not clear that a handbook that *enlarges* the employer's rights like the one here would be enforceable. *Cf*. *Staggs*, 61 Md.App. at 392 ("[W]e hold that provisions in such policy statements that *limit* the employer's discretion to terminate an indefinite employment or that set forth a required procedure for termination of such employment may, if properly expressed and communicated to the employee, become contractual undertakings by the employer that are enforceable by the employee." (emphasis added)).

provides no support for the proposition that the general terms in the acknowledgement page of the Employee Handbook (which presumably was provided to all SAR employees) should wholly trump the terms of the letter agreement (which presumably was specific to Dr. Perricci) regarding the duration of Dr. Perricci's employment.  In fact, the reverse is more likely the case.  *See Fed. Ins. Co. v. Allstate Ins. Co.*, 275 Md. 460, 472 (1975) ("Where two clauses or parts of a written agreement are apparently in conflict, and one is general in character and the other is specific, the specific stipulation will take precedence over the general, and control it."); *accord Acciai Speciali Terni USA, Inc. v. M/V Berane*, 182 F.Supp.2d 503, 508-09 (D.Md. 2002).

Further suggesting that the at-will term in the acknowledgement page is merely a general term subject to modification is the section titled "Termination of Employment" in the Employee Handbook.  That section contemplates that SAR occasionally hires employees who are not at-will:

> Unless you are given a written contract signed by the President specifying an employment term, your employment is 'at will.'  . . . Nothing in this Handbook, or any oral or written representation by any employee, official, manager, or supervisor of this Company, shall be construed as a contract of employment, unless the President signs a written contract of employment.

(ECF No. 10-4, at 1).   Thus, SAR cannot rely on the Employee Handbook, especially when read as a whole, for the proposition that every new employee like Dr. Perricci is hired on an at-will basis.   Although the letter agreement is not technically signed by the President of SAR, Maria J. Hankerson, it does include her printed name and title, and it was printed on SAR letterhead. Viewed in the light most favorable to Dr. Perricci, there are enough indicia in the documents dictating the terms of the employment relationship between SAR and Dr. Perricci from which it can be reasonably inferred that SAR intended to hire Dr. Perricci as more than an at-will employee.

Finally, SAR contends that if a definite term is read into the letter agreement, that term would violate the Statute of Frauds, thus rendering the letter agreement unenforceable.   (ECF No. 10-1, at 6-7).   "Under the Maryland statute of frauds, a contract that cannot be performed within one year is not enforceable unless the agreement 'or some memorandum or note of it, is in writing and signed by the party to be charged.'" *Salisbury Bldg. Supply Co. v. Krause Marine Towing Corp.*, 162 Md.App. 154, 160 (2005) (citing Md. Code Ann., Cts. & Jud. Proc. § 5-901(3)).   When determining whether an employment contract can be "performed within one year," a covenant not-to-compete for a specific period of time after employment should be

considered along with the term of employment itself. *See Collection & Investigation Bureau of Md., Inc. v. Linsley*, 37 Md.App. 66, 73 (1977).  In this case, SAR argues the letter agreement contained a one year covenant not-to-compete, which when added to a one-year term of employment would violate the statute of frauds.  To that end, SAR notes that as the party to be charged, the letter agreement was not signed by one of their authorized agents.

SAR's argument fails on at least two fronts.  First, regarding the validity of a signature:  "It is . . . a sufficient signing, if the name be in print, and in any part of the instrument, provided that the name is recognized and appropriated by the party to be his." *Dubrowin v. Schremp*, 248 Md. 166, 172 (1967) (citing *Drury v. Young*, 58 Md. 546, 554 (1882)).  Here, the printed name and title of SAR's President and CEO, Maria J. Hankerson, appears at the end of the letter agreement, which was printed on SAR letterhead.  Thus, the letter agreement was signed by the party to be charged for purposes of the Statute of Frauds. *See Drury*, 58 Md. at 554.[10] Second, part performance can be a "means to estop the defendant from asserting the [statute of frauds] as a defense," including

---

[10] Moreover, SAR does not contest the authenticity of the letter agreement and, in fact, refers to specific provisions within it throughout its motion. (*See, e.g.*, ECF No. 10-1, at 2).

in the employment context. *Friedman & Fuller, P.C. v. Funkhouser*, 107 Md.App. 91, 108 (1995), *disapproved of on other grounds by Pavel Enters., Inc. v. A.S. Johnson Co.*, 342 Md. 143, 166 (1996). The part performance "must furnish evidence of the identity of the contract; and it is not enough that it is evidence of *some* agreement, but it must relate to and be unequivocal evidence of the *particular* agreement." *Id.* at 108 (internal quotations omitted). Here, it is undisputed that Dr. Perricci worked until September 30, 2010, and was paid $81,964.81 through that date. It is also undisputed that the parties' respective part-performances are attributable only to the specific letter agreement at issue in this case. Accordingly, SAR cannot now evade the terms of the letter agreement via the statute of frauds.

Having thus determined that Dr. Perricci has produced evidence that the parties contracted for a fixed-term of employment for at least one year, Dr. Perricci's employment could have been terminated only for just cause on September 30, 2010. As neither party disputes that this was not the case here, SAR's motion for summary judgment will be denied as to Count One of the complaint.

### B. Count Two: Negligent Misrepresentation

In the second count of the complaint, Dr. Perricci contends, as an alternative to the breach of contract claim,

that SAR owed her a duty, which it breached, to disclose that her employment was contingent upon the continued operation of the Walter Reed contract and that the Walter Reed contract was due to expire during the first year of her employment.

To begin, contrary to Dr. Perricci's allegations, SAR may have sufficiently disclosed to Dr. Perricci that her employment was contingent upon the Walter Reed contract. In the letter agreement, SAR stated:

> You will serve as a[n] Adult psychiatrist *at SAR Corp's client site* and will be responsible for the duties listed on the Job Description. *This position is located in the Department of Psychiatry at Walter Reed Army Medical Center, Washington, DC*.

(ECF No. 1-1, at 1) (emphases added). Thus, by the plain language of the letter agreement, SAR promised Dr. Perricci only that she would have a position at Walter Reed; SAR did not promise her a general position as a contract psychiatrist. Dr. Perricci's claim for negligent misrepresentation therefore actually turns on the extent to which SAR allegedly failed to disclose that the Walter Reed contract could expire.[11]

In general, to establish liability for negligent misrepresentation in Maryland, a plaintiff must prove that: (1)

---

[11] In some sense, the distinction between the alleged nondisclosures is illusory. The fact that Dr. Perricci's employment was contingent upon the Walter Reed contract is material only if the Walter Reed contract had the potential for lapsing, and vice versa.

the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence. *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 135-36 (2007). Maryland also recognizes a cause of action for negligent misrepresentation based on a failure to disclose. *See Lubore v. RPM Assocs., Inc.*, 109 Md.App. 312, 340 (1996). SAR focuses on the fourth element, arguing that Dr. Perricci's reliance on its silence as to the Walter Reed contract was not reasonable and moves to dismiss solely on this ground. To this end, however, SAR relies in part on the Declaration of Maria Hankerson. (ECF No. 10-2, Hankerson Decl.). Also, relevant to this count, Dr. Perricci herself submitted an affidavit. (ECF No. 13-1, Perricci Aff., at 1-5). Because these materials are considered in resolving this claim, SAR's motion will be construed as a motion for summary judgment as to this count.

Justifiable reliance "turns on whether [the representations] were more than a 'statement of opinion, judgment or expectation.'" *Goldstein v. Miles*, 159 Md.App. 403,

436 (2004) (quoting *Buschman v. Codd*, 52 Md. 202, 207 (1879)).
In other words, where representations are "statements of
expectation, prediction, or future intention," it is generally
not reasonable to rely upon them, and where representations are
"statements of present intention," it is generally reasonable to
rely upon them. *See Weisman v. Connors*, 312 Md. 428, 454-55
(1988); *see also Griesi v. Atl. Gen. Hosp. Corp.*, 360 Md. 1, 20-
21 (2000) (noting that statements regarding past or present
facts may be justifiably relied upon while predictive statements
may not).

Here, in response to SAR's motion, Dr. Perricci has offered
evidence that "at no time before [she] started working at Walter
Reed" was she ever informed that the Walter Reed contract would
expire on September 30, 2010 (ECF No. 13-1, at 2-3) — the
implication being that SAR was aware of the September 30th
expiration date during the pre-employment negotiations with Dr.
Perricci and should have informed her of that fact.   SAR
provides no evidence countering this inference.   SAR's proffered
evidence, in the form of the Hankerson Declaration, actually
further supports the probability that it knew the Walter Reed
contract might expire on September 30th when it negotiated Dr.
Perricci's employment, especially when viewed in the light most

favorable to Dr. Perricci.  (*See* ECF No. 10-2 ¶¶ 3-4).[12]  As SAR asserts, it "had the Walter Reed contract for 12 years, and had no reason to believe that it would not be renewed."  (ECF No. 15, at 3).  Whether SAR thought the Walter Reed contract would ultimately be renewed by the government is beside the point; the evidence suggests that SAR was aware that the Walter Reed contract was *due to be renewed*.  It is this present fact that SAR allegedly failed to disclose and the omission of which, as a matter of law, Dr. Perricci could justifiably rely upon.  *See Griesi*, 360 Md. at 20-21 (holding that a potential employee could justifiably rely on a company's promise of a position).[13]

---

[12] The Hankerson Declaration states "SAR Corp's Walter Reed Psychiatrist contract initially commenced on August 21, 1998." (*Id.* ¶ 3).  It further states "[t]he Walter Reed contract was extended repeatedly over the next twelve years." (*Id.* ¶ 4).

[13] SAR's reliance on *Miller v. Fairchild Industries*, 97 Md.App. 324 (1993), for the proposition that a company's "optimistic representations about future business" cannot sustain a negligent misrepresentation claim is easily distinguishable. (*See* ECF No. 15, at 3).  Unlike *Miller*, SAR's omission here concerned a present fact about its knowledge of the Walter Reed contract.  In addition, though not relevant to the grounds upon which *Miller* was decided, it is worth pointing out that the plaintiffs in *Miller* were already employees of the company at the time of the representations.  *Miller*, 97 Md.App. at 328.  Here, Dr. Perricci was not yet an employee of SAR when the alleged omission occurred.  As the line of cases culminating in *Griesi* notes, pre-contractual employment negotiations are fraught with the potential for negligent misrepresentation due to the duty of care that the relationship between a potential employee and employer entails.  *See Griesi*, 360 Md. at 16; *Weisman*, 312 Md. at 448-49; *Lubore*, 109 Md.App. at 337.

Because Dr. Perricci has set forth sufficient facts supporting that at the time of her pre-employment negotiations with SAR, SAR was aware that the Walter Reed contract was due to be renewed, and because SAR advances no other basis for judgment in its favor regarding Dr. Perricci's negligent misrepresentation claim, SAR's motion will be denied as to this count.

### C.  Count Three:  Fraud in the Inducement

Like Count Two of the complaint, Count Three is also pled in the alternative.  Dr. Perricci's specific contentions in Count Three are similar to those in Count Two, except she adds the allegation that SAR intentionally deceived her.

The elements of fraud in Maryland are:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Md. Envtl. Trust v. Gaynor*, 370 Md. 89, 97 (2002).  Absent a duty to disclose, active concealment of a material fact, "characterized by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further

24

inquiry into a material matter," may also constitute common law fraud because concealment is analogous to intentional misrepresentation. *United States v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000). Separately, where a plaintiff alleges fraud with regard to mere nondisclosure of a material fact, she must establish that the defendant owed a duty of care to the plaintiff. *Id.* ("[S]ilence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud . . . .").

Claims of fraud, moreover, are subject to a heightened pleading standard under Fed.R.Civ.P. 9(b). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999).[14] Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Such allegations typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l*

---

[14] "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Id.* at 783 n.5. Accordingly, SAR's motion as to Count Three will be treated as a motion to dismiss.

*Mortg., Inc.*, 197 F.Supp.2d 298, 313–14 (D.Md. 2000) (quoting *Windsor Assocs., Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)).  In cases involving concealment or omissions of material facts, however, meeting Rule 9(b)'s particularity requirement will likely take a different form.  *See Shaw v. Brown & Williamson Tobacco Corp.*, 973 F.Supp. 539, 552 (D.Md. 1997) (recognizing that an omission likely "cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation" (internal quotations omitted)).  The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim, to protect the defendant against frivolous suits, to eliminate fraud actions where all of the facts are learned only after discovery, and to safeguard the defendant's reputation.  *See Harrison*, 176 F.3d at 784.  In keeping with these objectives,

> [a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial and (2) that [the] plaintiff has substantial prediscovery evidence of those facts.

*Id.*

In her complaint, Dr. Perricci alleges that

> SAR corp., with actual malice and intent to deceive Plaintiff did fail to disclose that

> Plaintiff's employment with Defendant was
> contingent on the continuation of
> Defendant's federal contract, that the
> federal contract upon which Plaintiff's
> employment was based was to lapse and expire
> on September 30, 2010, did conceal that the
> federal contract upon which Plaintiff's
> employment was based was to lapse and expire
> on September 30, 2010, and the Defendant did
> otherwise act with the intent to defraud and
> deceive the Plaintiff and with the intent to
> induce the Plaintiff into entering the
> employment contract.

(ECF No. 1 ¶ 20).   Under the heightened pleading standard of Rule 9(b), this allegation is insufficient.   At the very least, Dr. Perricci fails to describe the period of time that the pre-employment negotiations occurred during which SAR potentially owed her a duty to disclose the information about the Walter Reed contract.   The complaint generally lacks any facts regarding the manner of the negotiations.   Without these details, SAR does not have sufficient notice of the basis of Dr. Perricci's fraud claim.   *See Harrison*, 176 F.3d at 784. Accordingly, her fraud claim cannot be sustained and must be dismissed.

### D.   Count Four:  Respondeat Superior

Despite her initial pleading, Dr. Perricci concedes as she must that respondeat superior is a theory of liability and not an independent cause of action.   *See Mason v. Bd. of Educ.*, No. WMN-10-3143, 2011 WL 89998, at *2 n.3 (D.Md. Jan. 11, 2011).

Therefore, SAR's motion, construed as a motion to dismiss, will be granted as to this count.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss or, in the alternative, for summary judgment filed by Defendant will be granted in part and denied in part. A separate order will follow.

                             /s/
              DEBORAH K. CHASANOW
              United States District Judge
